969 F.2d 25
 23 Fed.R.Serv.3d 997
 Richard A. UMBENHAUER, Trustee in Bankruptcy of Xouth, Inc.,
d/b/a Woog International, James L. Galbally, Jr.,
Samuel L. Yankell, YRC, Inc., Appellants,
v.
Philippe-Guy WOOG, Les Produits Associes-Broxo, S.A.,
M.I.H., S.A., Appellees.
 No. 91-1881.
 United States Court of Appeals,
Third Circuit.
 Argued April 10, 1992.
Decided July 10, 1992.
 
 Bardyl R. Tirana (Argued), Washington, D.C., Joseph M. Greitzer, Greitzer & Locks, Philadelphia, Pa., for appellants.
 Joseph M. Donley (Argued), Johanna Smith, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, Pa., for appellees.
 Before: BECKER, COWEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 This appeal presents for our review the district court's order dismissing the complaint of plaintiffs who had attempted to serve process by international mail on two Swiss defendants. The district court held that service of process on the Swiss defendants had been insufficient. Although we agree with the district court that the plaintiffs' attempt to serve process on the Swiss defendants has not yet succeeded, we hold that dismissal of the plaintiffs' complaint for insufficient service of process, under the circumstances present here, constituted an abuse of the district court's discretion. Here, the plaintiffs were not subject to any time limitations prescribed in Fed.R.Civ.P. 4(j), and the plaintiffs have demonstrated that they retain a reasonable prospect of serving process successfully.
 
 
 2
 In addition, we note that the plaintiffs attempted to serve process under Fed.R.Civ.P. 4(i)(1)(D), which authorizes service on a party in a foreign country "by any form of mail ... to be addressed and dispatched by the clerk of the court to the party to be served." The plaintiffs' attempt failed solely because the district court clerk, in accordance with a policy of the Administrative Office of the United States Courts, refused to comply with Rule 4(i)(1)(D). Although the United States Department of State has instructed district court clerks not to serve process under Rule 4(i)(1)(D) on defendants in countries which, like Switzerland, object to that method of service, we hold that objections from foreign governments, as well as requests of the United States Department of State, cannot justify non-compliance with the Federal Rules of Civil Procedure.
 
 
 3
 We will therefore vacate the order of the district court which dismissed the plaintiffs' complaint for insufficient service of process, and we will remand this case to the district court with instructions to reinstate the plaintiffs' complaint and, according to the plaintiffs' wishes, either execute the plaintiffs' letters rogatory, allow the plaintiffs to make a new attempt at serving process under Pennsylvania law pursuant to Rule 4(c)(2)(C)(i), or have service of process made by the district court clerk under Rule 4(i)(1)(D).
 
 I.
 
 4
 On August 26, 1988, Xouth, Inc. ("Xouth"), a corporation that had been established to market Swiss oral hygiene dental products in the United States, filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. On August 24, 1990, Xouth's trustee in bankruptcy and several of Xouth's creditors ("plaintiffs") filed a complaint against Dr. Philippe-Guy Woog, who had served as Xouth's chairman, and against Les Produits Associes-Broxo, S.A. and M.I.H., S.A., two foreign corporations that had been affiliated with Xouth. The plaintiffs alleged that the defendants had committed bankruptcy fraud, common law fraud, conspiracy to defraud, conversion, and breach of contract in connection with loans that the plaintiffs had made to Xouth.
 
 
 5
 On filing their complaint in the district court in the Eastern District of Pennsylvania, the plaintiffs' attempted to serve process on Dr. Woog, a citizen of Switzerland, and Les Produits Associes-Broxo, S.A., a Swiss corporation (hereinafter "Swiss defendants"). The plaintiffs initially attempted to serve process under Fed. Rules of Civ. P. 4(i)(1)(D), which authorizes service "by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." However, the district court clerk informed the plaintiffs that, at the request of the United States Department of State, the Administrative Office of the United States Courts had instructed its clerks not to serve process on Swiss citizens under that Rule.[1] The plaintiffs subsequently received from the Department of State a circular entitled "Judicial Assistance in Switzerland," which advised that service should be effected on Swiss defendants through letters rogatory; i.e., letters from U.S. courts to corresponding foreign courts. The circular also advised that service could be effected on the Swiss defendants by international registered mail, but that a judgment resulting from such service may not be enforceable in Switzerland.
 
 
 6
 The plaintiffs next attempted to serve process on the Swiss defendants under Fed.R.Civ.P. 4(c)(2)(C) by sending a copy of the summons, the complaint, and a federal acknowledgement of service form (Form 18-A) directly to the Swiss defendants on December 17, 1990. When the Swiss defendants failed to acknowledge service, the plaintiffs filed a motion in the district court for a judgment of default. The Swiss defendants countered with a motion under Fed.R.Civ.P. 12(b)(5) to dismiss the plaintiffs' complaint for insufficiency of process because, under Fed.R.Civ.P. 4(c)(2)(C)(ii), process is not considered served until it is acknowledged.
 
 
 7
 The district court denied the plaintiffs' motion for a default judgment and granted the Swiss defendants' motion to dismiss the plaintiffs' complaint. The plaintiffs filed a motion for reconsideration, arguing that they had served sufficient process under Fed.R.Civ.P. 4(c)(2)(C)(i), which allows service of process under state law, and that relevant state law did not require acknowledgment of service.[2] In the alternative, the plaintiffs asked the district court to facilitate their service of process on the Swiss defendants either by executing letters rogatory, which the plaintiffs provided to the court, or by instructing the district court clerk to make service under Fed.R.Civ.P. 4(i)(1)(D). The district court denied the plaintiffs' motion, holding, among other things, that no service could be effected, inasmuch as the complaint had earlier been dismissed, leaving no operative complaint to which service could attach.
 
 
 8
 The plaintiffs argue on appeal, as they did before the district court, that they properly served process on the Swiss defendants pursuant to Pennsylvania's Rules of Civil Procedure, as authorized by Rule 4(c)(2)(C)(i), and not pursuant to Rule 4(c)(2)(C)(ii). The plaintiffs also argue that the clerk of the district court improperly declined to serve process on the Swiss defendants under Rule 4(i)(1)(D), and that the district court judge should have permitted service of process on the Swiss defendants by executing letters rogatory.
 
 II.
 
 9
 We have plenary review over the district court's holding that the plaintiffs had not properly served process on the Swiss defendants. We review for abuse of discretion the district court's decision to dismiss the complaint. See, e.g., Richardson v. Ingram Corp., 374 F.2d 502, 503 (3d Cir.), cert. denied, 389 U.S. 866, 88 S.Ct. 134, 19 L.Ed.2d 139 (1967); Novak v. World Bank, 703 F.2d 1305, 1310 (D.C.Cir.1983).
 
 
 10
 We have plenary review over the district court's refusal to require the district court clerk to serve process on the Swiss defendants under Rule 4(i)(1)(D).
 
 III.
 
 11
 Rule 4(c)(2)(C) of the Federal Rules of Civil Procedure provides two methods for serving process in a federal action.[3] Rule 4(c)(2)(C)(ii), (hereinafter "federal service provision"), affords a uniquely federal method of serving process, whereby a plaintiff may attempt to serve process by sending to the defendant a summons, complaint and two copies of a "notice and acknowledgement" form, (Form 18-A), via first-class mail. Upon receipt of these documents, the defendant may either acknowledge service, in which case process will have been properly served, or may do nothing, in which case the plaintiff must resort to personal service.[4] See generally Stranahan Gear Co., Inc. v. NL Industries, 800 F.2d 53, 56 (3d Cir.1986).
 
 
 12
 Alternatively, process may be served under Rule 4(c)(2)(C)(i), (hereinafter "state-law service provision"), which permits service of process in accordance with state law. The plaintiffs claim that they effectively served process on the Swiss defendants under Pennsylvania law, as permitted by the state-law service provision, because Pennsylvania law provides that process is served on an out-of-state defendant upon the defendant's receipt of the summons and complaint through any form of mail service providing a return receipt. See Penn.Rules Civ.P. 403, 404. The record here contains the returned receipts, which evidence the Swiss defendants' receipt of the summons and complaint. (A. 23, 27).
 
 
 13
 Although the plaintiffs accurately characterize Pennsylvania law, the record clearly reveals that the plaintiffs served process under the federal service provision and not under the state-law service provision. Had the plaintiffs simply mailed copies of the summons and complaint to the Swiss defendants, the requirements of Pennsylvania law would have been satisfied and process would have been served. However, in addition to the summons and complaint, the plaintiffs mailed to the Swiss defendants Form 18-A, the standard federal "notice and acknowledgment" form. By mailing that form, the plaintiffs unequivocally identified their intent to serve process under the federal, and not the state-law, service provision.
 
 Form 18-A reads, in part:
 
 14
 The enclosed summons and complaint are served pursuant to [the federal service provision] of the Federal Rules of Civil Procedure.
 
 
 15
 You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within 20 days....
 
 
 16
 If you do not complete and return the form to the sender within 20 days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.
 
 
 17
 (Emphasis added). A recipient of Form 18-A would understandably rely on the provisions of that form, including its declaration that service had been attempted under the federal service provision. A response by such a recipient to service with Form 18-A would be dictated by the options provided in that form. Having informed the Swiss defendants, through the inclusion of Form 18-A, that service had been attempted under the federal service provision, the plaintiffs may not now retroactively characterize their service attempt as having been made pursuant to state law. See Armco, Inc. v. Penrod-Stauffer Bldg. Systems, Inc., 733 F.2d 1087, 1089 (4th Cir.1984); Combs v. Nick Garin Trucking, 825 F.2d 437, 443, 439 (D.C.Cir.1987); Media Duplication Services, Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1234 n. 3 (1st Cir.1991).
 
 
 18
 Rather, the plaintiffs, through their inclusion of Form 18-A, obligated themselves to comply with the requirements of the federal service rule. The federal service rule provides that if the defendants do not acknowledge service within twenty days from the date of mailing, then service of the summons and complaint must be made personally. See Fed.R.Civ.P. 4(c)(2)(C)(ii). No such alternate service was ever effected upon the two Swiss defendants.
 
 
 19
 Thus, the district court properly held that the attempted service by mail, which included Form 18-A but which did not result in an acknowledgment by the defendants or the authorized alternate service upon them, was insufficient to bring the defendants into court. We therefore agree with the district court that the plaintiffs have not effectively served process on the Swiss defendants.[5]
 
 IV.
 
 20
 The plaintiffs argue that, even if they have not yet properly served process, their improper service of process should not have resulted in the dismissal of their complaint.[6] We agree.
 
 
 21
 Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process. However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service. See, e.g., Richardson v. Ingram Corp., 374 F.2d 502, 503 (3d Cir.), cert. denied, 389 U.S. 866, 88 S.Ct. 134, 19 L.Ed.2d 139 (1967); Novak v. World Bank, 703 F.2d 1305, 1310 (D.C.Cir.1983); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1354 at 288-92 (1990).
 
 
 22
 In the present case, the plaintiffs, either pursuant to Rule 4(i)(1)(B), which provides for letters rogatory, or Rule 4(i)(1)(D), which provides for service by signed receipt mail dispatched by the district court clerk, or through a new attempt at serving process under Pennsylvania law pursuant to Rule 4(c)(2)(C)(i),[7] are likely to succeed in their attempts to serve process on the Swiss defendants. We observe that the plaintiffs exceeded no time limit in their unsuccessful attempts to serve process on the Swiss defendants. In the context of service on domestic defendants, Fed.R.Civ.P. 4(j)[8] requires dismissal of a plaintiff's complaint without prejudice if, absent a showing of good cause, the plaintiff does not make service within 120 days after he files his complaint. The plaintiffs filed their complaint on August 24, 1990 and attempted to serve process on September 17, 1990. The defendants filed their motion to dismiss the plaintiffs' complaint 74 days later, on November 30, 1990. Thus, even had service been attempted on a domestic defendant, 120 days had not yet expired at the time that the defendants' motion to dismiss was filed.
 
 
 23
 In addition, Rule 4(j) expressly states that it "shall not apply to service in a foreign country pursuant to subdivision (i)" of Rule 4. Rule 4(j)'s drafters apparently incorporated this exemption into Rule 4(j) because, as we have recognized, "the vagaries of such service [on foreign defendants] render the Rule 4(j) time limit too burdensome on a plaintiff." Green v. Humphrey Elevator and Truck Co., 816 F.2d 877 (3d Cir.1987). Cf. Montalbano v. Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir.1985) (holding that Rule 4(j)'s exemption for service in foreign countries did not apply where service under Rule 4(i) was never attempted). Thus, no time bar prevented, or now prevents, the plaintiffs from serving process on the Swiss defendants. Nor did the district court identify any other ground or factor which would warrant a dismissal of the plaintiffs' complaint. See, e.g., Welch v. Folsom, 925 F.2d 666, 670 (3d Cir.1991).
 
 
 24
 Further, service of process on the Swiss defendants is eminently feasible. The plaintiffs may make a second attempt at serving process under Pennsylvania law pursuant to Rule 4(c)(2)(C)(i). See supra note 7. Also, Rule 4(i)(1) provides five alternative federal methods for overseas service of process:
 
 
 25
 When the federal or state law ... authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made:
 
 
 26
 (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
 
 
 27
 (B) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or
 
 
 28
 (C) upon an individual, by delivery to the individual personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or
 
 
 29
 (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be serviced; or
 
 
 30
 (E) as directed by order of the court.
 
 
 31
 Pursuant to Rule 4(i)(1)(B), the plaintiffs provided letters rogatory to the district court judge on February 7, 1991 along with their motion for reconsideration. However, the district court judge declined to execute the letters rogatory, explaining that he had previously dismissed the complaint, leaving no operative complaint which could be served. Because the plaintiffs were not time-barred from serving process, and no other basis for dismissal of the plaintiffs' complaint appears in the record, and because the plaintiffs' submission of letters rogatory demonstrated their willingness to serve process on the Swiss defendants under that method, the district court's dismissal of the plaintiffs' complaint constituted an abuse of discretion.
 
 V.
 
 32
 At oral argument, the plaintiffs represented that, if the plaintiffs' complaint were reinstated, service would likely be attempted initially under Rule 4(i)(1)(B) (letters rogatory). However, when pressed, the plaintiffs declined to voluntarily limit themselves to that particular mode of service, due to uncertainty as to whether the Swiss government would provide the cooperation that service by letters rogatory requires. Hence plaintiffs, having raised in their brief issues concerning alternative forms of service which they desire to use, have urged us to address and decide the propriety of those forms of service. We have already discussed state service of process under 4(c)(2)(C)(i), see supra. We turn, therefore, to a consideration of Rule 4(i)(1)(D), which would permit service "by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be serviced."
 
 
 33
 The record reveals that the plaintiffs initially endeavored to serve process on the Swiss defendants by requesting the district court clerk to address and dispatch the summons and complaint to the Swiss defendants. Nevertheless, and despite the clear language of Rule 4(i)(1)(D), the district court clerk refused the plaintiffs' request. This refusal accorded with an articulated policy of the Administrative Office of the United States Courts. The Administrative Office, apparently at the behest of the United States Department of State, had instructed district court clerks not to serve Rule 4(i)(1)(D) process on defendants in countries which, like Switzerland, object to service of process on their citizens under that provision.
 
 
 34
 We hold that the district court clerk improperly disregarded the dictates of Rule 4(i)(1)(D). Neither we, the Department of State, nor the Administrative Office of the United States Courts possess the authority to circumvent, ignore or deviate from the Federal Rules of Civil Procedure, which were approved by the Judicial Conference of the United States, the Supreme Court of the United States, and Congress. Cf. United States v. Heller, 957 F.2d 26, 31 (1st Cir.1992) ("clerk's office personnel [are not] empowered to bring about the waiver of fundamental jurisdictional requirements"). Whether or not the Rules should be amended to deal more adequately with the question of overseas service to countries which disapprove of Rule 4(i)(1)(D) is not for us to decide.
 
 
 35
 We note that the Standing Rules Committee of the Judicial Conference of the United States recently drafted relevant proposed revisions to Fed.R.Civ.P. 4. These proposed revisions, which will be submitted to the Judicial Conference in September 1992, would generally not authorize service by methods that violate the law of the country in which the defendant is located. Proposed Rule 4(f)(2)(C), which would replace current Rule 4(i)(1)(D), allows service on a foreign defendant:unless prohibited by the law of the foreign country, by
 
 
 36
 (i) delivery to the individual personally of a copy of the summons and complaint; or
 
 
 37
 (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served.
 
 
 38
 (Emphasis added).
 
 
 39
 If proposed Rule 4(f)(2)(C) were in effect today, then contrary to our holding here, the new Rule would preclude a district court clerk from serving process by signed receipt mail on a defendant in a country whose laws forbid that method of service. Thus, the actions of the district court clerk in the present case in refusing to make service on the Swiss defendants would likely have been appropriate under the proposed Rule. However, the existing Rule, and not the proposed Rule, was in force when the district court clerk refused to allow service of process by signed receipt mail on the Swiss defendants. Consequently, the existing Rule must necessarily control the outcome in this case. While foreign objections to specific service methods may result in Congressional modifications to Rule 4, such objections cannot justify non-compliance with that Rule's current requirements at any time before the proposed revisions to Rule 4 are properly enacted.
 
 
 40
 Although the following statement, by then Chief Judge Howard T. Markey of the United States Court of Appeals for the Federal Circuit, was made in a different context, it is significantly relevant to the very issue that concerns us here. In rejecting proposals to conduct patent trials under procedures other than those prescribed by the Federal Rules of Civil Procedure, Judge Markey stated:
 
 
 41
 [t]he Federal Rules of Civil Procedure are the result of years of work by lawyers and Judges. They were approved and adopted by the Judicial Conference of the United States, by the Supreme Court, and by Congress. They are law.
 
 
 42
 Markey, On Simplifying Patent Trials, 116 F.R.D. 369.
 
 
 43
 We therefore disagree with the D.C. Circuit, which reasoned, albeit in dictum, that Rule 4(i)(1) provided five alternative methods of service so that the availability of an alternative method of service could render inoperative any methods to which objections had been raised by a foreign government. In so reasoning, the court stated that Rule 4(i)(1) "underlines rather than obviates the need for judicial sensitivity to foreign territorial sovereignty when scrutinizing particular methods of overseas service." F.T.C. v. Compagnie de Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1314 (D.C.Cir.1980) (holding the Federal Trade Commission's service by mail of an investigatory subpoena on a French corporation in France to be ineffective). We read no such message in the unambiguous language of Rule 4(i)(1).
 
 
 44
 Indeed, we prefer the approach of the D.C. Circuit in Novak v. World Bank, 703 F.2d 1305 (D.C.Cir.1983), which, while not discussing service of process on foreign defendants, found it necessary to admonish the U.S. Marshal Service that U.S. Marshals may not ignore established rules of service. In Novak, a U.S. Marshal refused to serve process on the World Bank because the Marshal agreed with the World Bank's contention that it was immune from suit.[9] The district court subsequently dismissed without prejudice the plaintiff's action against the World Bank for failure to effect proper service. On appeal, the D.C. Circuit reversed the district court's dismissal of the plaintiff's complaint, explaining that the Marshal's personal views regarding the viability of a plaintiff's claim or the amenability of a defendant to suit could not possibly justify deviation from the service requirements of the Federal Rules of Civil Procedure. Similarly, in the present case, the Administrative Office of the United States Courts, and our district court clerks, must adhere to the Federal Rules' dictates despite advice received from non-judicial outside sources.
 
 
 45
 Rule 4(i)(1) neither explicitly nor implicitly requires any deference to foreign governments or to the U.S. Department of State in the manner by which service of process shall be made. We therefore hold that all five of that Rule's service methods must remain equally available to plaintiffs who, like the plaintiffs in the instant case, wish to serve process in foreign countries.
 
 VI.
 
 46
 For the above reasons, we will vacate the order of the district court which dismissed the plaintiffs' complaint for insufficient service of process and we will remand this case to the district court with instructions to reinstate the plaintiffs' complaint and, according to the plaintiffs' wishes, either execute the plaintiffs' letters rogatory, allow the plaintiffs to make a new attempt at serving process under Pennsylvania law pursuant to Rule 4(c)(2)(C)(i), or have service of process made by the district court clerk under Rule 4(i)(1)(D).
 
 
 47
 Each party shall bear its own costs.
 
 EXHIBIT A
 
 48
 Memorandum dated November 6, 1980 from the Administrative Office of the United States Court Clerks re Service of Process in Foreign Countries:
 
 
 49
 The Department of State has advised us that a number of foreign states have recently submitted diplomatic notes of protest objecting to service of process of international mail upon defendants residing within their territory. This memorandum is being distributed in an attempt to clarify the procedures to be followed in serving American judicial documents abroad.
 
 
 50
 Service upon defendants abroad in cases arising in federal district courts is governed generally by Rule 4(i) of the Federal Rules of Civil Procedure. Service by mail is dealt with in Rule 4(i)(1)(D). That Rule provides that the clerks of court shall be responsible for dispatching the summons and complaint into the international mails.
 
 
 51
 When summonses and complaints are mailed abroad in accordance with Rule 4(i)(1)(D), this method of service, according to some foreign states, violates either the judicial sovereignty of those foreign states or international law. These governments protest that such service usurps the functions of duly designated officials of their country who are charged by the domestic laws of their country to perform service of process.
 
 
 52
 Similarly, service by international mail in those countries which are a party of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, (done at The Hague, November 15, 1965; entered into force for the United States, February 10, 1969; 20 USR 361; TIAS 6638; 658 UNTS 163), and which have made a reservation with respect to Article 10(a) of the Convention, whereby a state declares it objects to service by international mail, has also generated diplomatic notes of protest.
 
 
 53
 In order to avoid this problem in the future, we are requesting clerks of court to refrain from sending summonses and complaints by international mail to foreign defendants in those countries which have protested service by international mail, namely Czechoslovakia, Switzerland, and the Union of Soviet Socialist Republics. In those countries, letters rogatory are the appropriate mechanism for service.
 
 
 
 [1]
 Annexed to this opinion as "Exhibit A" is a copy of the memorandum issued by the Administrative Office of the United States Courts, entitled "Service of Process in Foreign Countries" and dated November 6, 1980
 
 
 [2]
 Pennsylvania's Rules of Civil Procedure provide:
 RULE 404. SERVICE OUTSIDE THE COMMONWEALTH. Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof:
 (2) by any competent adult by mail in the manner provided by Rule 403.
 RULE 403. SERVICE BY MAIL. If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon delivery of the mail.
 Pa.R.Civ.P. 404(2); 403.
 
 
 [3]
 Fed.R.Civ.P. 4(c)(2)(C) provides:
 (C) A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule--
 (i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State, or
 (ii) by mailing a copy of the summons and of the complaint (by first class mail, postage pre-paid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18-A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3) [personal delivery].
 
 
 [4]
 Where a party does not accept and acknowledge service, that party may be required to pay the cost of service. See Fed.R.Civ.P. 4(c)(2)(D)
 
 
 [5]
 Because we focus on the reasonable reliance of Dr. Woog and Broxo on the language of Form 18-A, we need not decide whether process may ever properly be served on a foreign defendant under Rule 4(c)(2)(C)(ii). We note that Rule 4(c)(2)(C)(ii) requires the use of first-class mail, a category of domestic mail that does not apply to overseas mail. See Domestic Mail Manual, incorporated by reference at 39 C.F.R. § 111.1; International Mail Manual, incorporated by reference at 39 C.F.R. § 20.1
 
 
 [6]
 The district court's order dismissing the plaintiffs' complaint read:
 Accordingly, defendants' motion to dismiss the complaint pursuant to Rule 12(b)(5) is GRANTED. The complaint is dismissed as to defendants Philippe-Guy Woog and Les Produits Associes-Broxo, S.A.
 (A. 85). Although the district court's order did not specify that the plaintiffs' complaint was dismissed without prejudice, we have held that dismissals under Fed.R.Civ.P. 4(j), 12(b)(4) and 12(b)(5) must be entered without prejudice. See, e.g., Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.1944). We therefore hold that the district court's order dismissed the plaintiffs' complaint without prejudice.
 Orders dismissing complaints without prejudice are generally not final within the meaning of 28 U.S.C. § 1291, and thus do not give rise to appellate jurisdiction, where the plaintiff whose complaint has been dismissed without prejudice may simply cure the deficiency and refile the complaint or where the plaintiff declares his intention to stand on his complaint. See Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir.1976). However, the plaintiffs' counsel in the present case informed us at oral argument that the statute of limitations on the plaintiffs' cause of action has run. Consequently, the order of dismissal is final and appealable because the plaintiffs are unable to refile their complaint. See Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1155 (3d Cir.1986); Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 878 n. 4 (3d Cir.1987).
 
 
 [7]
 Plaintiffs who, like the plaintiffs in the present case, fail to effect service under Rule 4(c)(2)(C)(ii) may make a second, separate attempt at service under state-law procedures pursuant to Rule 4(c)(2)(C)(i). See S.J. Groves & Sons Co. v. J.A. Montgomery, 866 F.2d 101 (4th Cir.1989). See also, Humana, Inc. v. Jacobson, 804 F.2d 1390, 1393 (5th Cir.1986); Electrical Specialty Company v. Road & Ranch Supply, Inc., 967 F.2d 309, 312 (9th Cir.1992). Of course, upon the reinstatement of the complaint, any such attempt by plaintiffs in the present case would require adherence to relevant Pennsylvania procedural law, and the summons and complaint could not be accompanied by Form 18-A. See Part III of this opinion supra
 
 
 [8]
 Fed.R.Civ.P. 4(j) provides:
 (j) Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.
 
 
 [9]
 The Federal Rules of Civil Procedure in effect at that time, unlike the current rules, authorized U.S. Marshals to serve summonses and complaints in actions brought by individual citizens. Under the current rules, process in actions brought by individual citizens must be served by adult non-parties. See Fed.R.Civ.P. 4(c)(2)